321-0343, the people of the state of Illinois, abdicate by Laura Byron v. Lionel H. Pruitt, assemblance by Joel A. Flaxman. Thank you. Good morning, Mr. Flaxman. Good morning. Good morning, counsel. May I proceed? Yes, you may. OK. May it please the court, this is the first case that's scheduled for argument today that concerns common issues about the certificate of innocence statute. In this case, Lionel Pruitt was convicted of aggravated unlawful use of a weapon under a statute that was later found to be unconstitutional. The language that the Supreme Court has used in the Chennault case was that he pled guilty to something that was never a crime. In the Chennault case, the Supreme Court talked about a plea like that as being defective. After the conviction was vacated as unconstitutional, Mr. Pruitt sought a certificate of innocence. The certificate was denied, and we're here on appeal from that denial. The questions that come up in this case are ones that were before the court in a case called People v. Clinton in 2018. And in both of those questions before the court, the court answered them in favor of the petitioner there and applied to Mr. Pruitt. The court should have entered the certificate of innocence. And as I'll explain, we want the court to follow the Clinton in this case. The certificate of innocence statute sets out four elements that a petitioner has to satisfy to receive a certificate of innocence. Only two of those elements are at issue here, element three and element four. Those are in subsections G3 and G4 of the statute. I think the principal one in this case is G4, so I'll begin there. The requirement in G4 is that a petitioner must show that he did not voluntarily cause or bring about his conviction. The state's argument in Mr. Pruitt's case is that by pleading guilty, he voluntarily caused or brought about his conviction. This court addressed G4 in the McClinton case, and in paragraph 20 of the case, the court's opinion said a petitioner cannot voluntarily cause or bring about a conviction under an unconstitutional statute. I mentioned the Supreme Court's opinion in the Chennault case where they called a plea to an unconstitutional offense as defective. And so it's our position that it's just not possible to voluntarily cause a conviction under an unconstitutional statute. The state's position is that McClinton's rule doesn't apply to guilty pleas, that the defendant, the petitioner in McClinton had been found guilty after a trial. Nothing in the opinion limits it to trials. Nothing changes the application of that rule that a petitioner cannot voluntarily cause or bring about an unconstitutional conviction. The Illinois Supreme Court endorsed this court's ruling in McClinton in the Washington case. That case did involve a guilty plea. The petitioner had pleaded guilty to a murder, and after his conviction was vacated, sought a certificate of innocence, arguing that his guilty plea was caused by a coercive interrogation, and also that one of the reasons he pleaded guilty was because he saw his co-defendant get a 75-year sentence. The appellate court, the first district  that the state wants the court to apply, which is that a guilty plea is a categorical bar to a certificate of innocence. The Supreme Court reversed that and held that a guilty plea is not a categorical bar to a certificate of innocence. Mr. Flaxman, the state, I'm sure, is going to bring this up, and maybe I should wait, but it's quite a bit different case, the Washington case, than the case we have in front of us. Yes, no dispute that the facts of those cases are different, and I'm not, I'm certainly not saying that Washington, that the facts of Washington are the same as this case, and I do want to, I don't think I should wait for the state. I do want to address why the state says the cases are different. In Washington, there was factual evidence about the defendant's innocence. There was evidence that police officers had coerced him. There was evidence that those police officers had coerced other defendants. There was also strong evidence in the Washington case of the real murderer. It's the kind of thing that there, maybe there is going to be a movie about it. It's a very dramatic story. In our case, we don't have that kind of evidence. So we are arguing to apply the rules of Washington to a different factual setting. And the rule of Washington, first of all, is that a guilty plea is not a categorical bar to a certificate of innocence. I'm sure the state will agree with me on that. But the way that the court applied the certificate of innocence statute in Washington was to say that because the coerced confession animated Mr. Washington's choice to plead guilty, that choice was not voluntary. And in this case, we have the exact same thing. We say the charging of Mr. Pruitt under an unconstitutional statute, which was not held unconstitutional until many years later, animated his decision to plead guilty. And that's how we argue that Washington applies in this different factual setting. Another way of looking at it is based on contract principles, which the courts regularly apply to guilty pleas. And under contract principles, a party cannot voluntarily enter into a void contract. And that's what we have here, where a defendant pleads guilty to an offense that's later held to be unconstitutional. That guilty plea and the conviction get vacated because the offense was voided. It's the same as a void contract. Again, that's something the Supreme Court talked about in the Chennault case, where a guilty plea to an unconstitutional conviction was later vacated. Another contract principle that applies with equal force is the idea that a contract is not voluntary if it's based on a misapprehension of law or fact. That's something that gets applied when a defendant mistakenly believes that the offense, or I'm sorry, that the penalty is incorrect. In this case, the misapprehension was that the defendant was being charged under a constitutional statute. And once the Supreme Court in the Aguilar case and the cases that follow held that the statute was unconstitutional, the defendant can go back and undo that guilty plea, be caught, and the principle that they can do it because of a misapprehension of law or fact is that it was involuntary. Something else I think you'll hear from the state is that treating it as voluntary would unfairly give the defendant a benefit, that he received a benefit from pleading guilty, so he should not now be able to argue that his guilty plea was involuntary. I think that there's two responses. One is that that argument really ignores that the state received a benefit, that when two parties come to an agreement, we think of both of them as getting a benefit and both of them making that agreement. The second one is really to look at Washington. And as I mentioned before, when I was talking about the facts of that case, Mr. Washington pleaded guilty because of those four's confession. He also pleaded guilty because he saw his co-defendant sentenced to 75 years, and he had an opportunity to be sentenced to 25 years. So it's very easy to say that Mr. Washington received a benefit by pleading guilty. The Supreme Court didn't see that as any obstacle to awarding the Certificate of Innocence. Unless there are other questions on G4, we would just ask the court to follow its ruling in Clinton that the requirement of proving a defendant did not voluntarily cause or bring about their conviction is not a bar to a Certificate of Innocence where the conviction was for an unconstitutional offense. The other issue that's in this case is under subsection G3. Subsection G3 of the Certificate of Innocence statute requires a petitioner to show that they are innocent, of the offense charged in the indictment or information. In this case, Mr. Pruitt was charged in a one-count indictment, and from our point of view, there's no dispute that he was innocent of that one offense because that conviction has been vacated as void. The state argues that the court also needs to consider a separate indictment because Mr. Pruitt pleaded guilty in both cases on the same day. That's an argument that wasn't raised in the circuit court. It's our position that it's too late to raise that new argument, especially where it relies on record from a separate case that wasn't before the trial court. On the merits, the case just doesn't mat, I'm sorry, on the merits of the state's argument is not consistent with the language in Subsection G3, which refers to innocent of the offenses charged in the indictment or information. That word, the, is a restrictive word that says the statute is talking about something that is previously defined, and every reference in the statute to indictment or information is to the indictment or information containing the offense that the defendant pleaded guilty to. Beside the text, it's also just illogical to bring in this other case. Mr. Pruitt pleaded guilty to a gun charge that was allegedly committed on May 16th, 2003. The state wants to rely on this other case, which was a possession of a controlled substance charge from March of 2003, and it's our position there's no basis to combine the indictments for these two unrelated offenses under Illinois law. They couldn't even be in the same indictment because they weren't about the same act or the same transaction. The last thing I'll say about this argument for bringing another offense is just how absurd it could be in other cases. I have a client who was recently exonerated of a murder. He came home after spending 25 years in prison. Very early in his prison sentence, he was convicted of possession of cannabis in a penal institution. It would be absurd to say that because of that offense, he cannot get a certificate of innocence on the completely unrelated murder charge. So that's why we asked the court not to adopt a reading of subsection G3 that has an absurd result. When we talk about the, in that provision of the statute, we mean the indictment or information that contains the relevant charge. Unless there are other questions, I think I've presented everything in this case. I think other justices are gonna be, so I may see some of you again, but we have other cases that have similar issues, a few different wrinkles between them. But in this case, and I'm sure, and I'll say the other, the same thing in the other cases, we respectfully request that the court vacate the judgment below and remand for entry of the certificate of innocence. Are there any other questions? Counsel, is there any significance to the concurrent nature of the sentences in this case? There is a relevance of that to Mr. Pruitt, but not to what the court's deciding today. The question of, and I'm sorry, I don't have the, I believe that the sentence in this case is that he did do more time on the gun charge. I think he did more time before sentencing on the gun charge, so if you put together all the days, some more time of it is attributable to the gun charge. But the question of how much time he served is not before this court. I think it's very plain from the statute and that this court acknowledged in the Clinton that the question of damages is one that gets considered by the court of claims. The way the process, the way the certificate of innocence process works, the circuit court grants the certificate, the clerk shall send it to the clerk of the court of claims, and then it's up to the court of claims to determine what the damages are. So I will tell you from my own experience with the court of claims, in cases where there was a concurrent sentence, the court of claims has ruled he's not entitled to any damages. But that doesn't mean he's not entitled to the certificate of innocence, that he was innocent of the offense that's before the circuit court. So that's why we would argue that's not significant, and the court doesn't need to consider that issue because it's a question for the court of claims. Thank you. Mr. Flatzman, the import of G3, I think at least the way the courts have interpreted it, is that the person has to be innocent not only of the crime that they committed that they served time for, but they actually have to be an innocent person. Seems to be the gist of G3. Does that bear on what the state is saying here? So the argument that I expect to address at length in the other three cases that are before the court is that the language of G3 showing, and I'll make sure I'm reading the right language, that the petitioner is innocent of the offenses charged in the indictment or information. The state's view is that he must show innocent of all of the offenses charged in the indictment or information. It's what I'm gonna argue in the other three cases, that in a multi-count indictment or information, the only relevant charge is the offense of incarceration. And so that rule would support Mr. Pruitt, but because it was only a one-count indictment here, it's our position is that the court doesn't need to reach that question in this case. Okay, that's not exactly. Can I try again? Well, maybe I can state my question better. The second indictment and the second plea would arguably show that Mr. Pruitt is not an innocent person. So whether it was a separate plea, isn't it sort of like if there's one indictment that has multiple crimes in it? Well, it's not like it's one indictment with multiple crimes, because the crimes can't be combined in one indictment, because they're from different dates, they're different transactions. In terms of the question, must a petitioner be totally innocent or innocent of everything? That's just not in the text of the statute. I think, and it's the McClinton case did involve other offenses that the state didn't go forward on. I think it's more plainly in the Palmer case, where the state opposed the certificate of innocence based on a different theory of guilt. And I think it was plainly before the Supreme Court, this argument that he's not truly guilty, he's not, I'm sorry, he's not truly innocent, he's not completely innocent, and that argument didn't carry the day. So it didn't carry the day on an offense that was certainly in the indictment there, it shouldn't carry the day here on an offense that is from a completely different indictment. Thank you. Thanks. Anything else? For the students who are here, the state is going to be represented by Ms. Bialin, who was not able to be here today. So we're using our hybrid system so that she can do her argument remotely. Justice McDoug, may I ask her one question before she starts? Yes. Ms. Bialin, I can barely see you, I'm gonna have to move some things here, but did you hear everything okay? I noticed you had headphones in at one point and not another. I know, I put the tornado sirens going off, but now that time is over, so. Well, it is a Tuesday, isn't it? Yes, yes. So I could hear everything. So good morning, Ms. Bialin. Good morning. You can start. Do you need to move the screen? No. Okay. Thank you so much for your flexibility, I really wish I could be there in person, but I'm glad to be able to keep the schedule. May we please the court? Lord, by law, how do you have these people? People ask that this court affirm the denial of the petition for certificate of innocence. The court can affirm on any basis in the record, and it's not a state of the field report which it would apply. People are asking that the court affirm, so the court can affirm for any basis, and as far as it being a current record, that other case is the same record as this case because it was a single plea hearing, it was a joint plea, it was a package deal to resolve two cases for concurrent terms of probation and concurrent jail terms, so the people didn't pull in a separate record that had nothing to do with this case, that record was this record because it was a state plea hearing. There are four elements a petitioner must plead and prove in order to obtain a certificate of innocence, as Mr. Blackstone mentioned, and the burden is on the petitioner to prove all four of those elements by a preponderance of the evidence. Here, the people argue that the petitioner didn't meet the burden on two separate elements, G3 and G4, and the people will address those elements in the order that Mr. Blackstone has addressed them. Element G4, under the Illinois Supreme Court case of Washington, whether a petitioner voluntarily caused or brought about their conviction by pleading guilty is to be determined on a case-by-case basis considering the totality of the circumstances. The Washington court also stated that the plain meaning of voluntary is resulting from free choice without compulsion or solicitation. Here, the petitioner was not compelled to enter into the combined guilty plea. He could have chosen not to plead guilty and instead proceeded to trial in both cases and challenge the constitutionality of the statute, but he didn't. Instead, he accepted the combined plea that concurrent terms of probation and jail instead of taking one to three years imprisonment. Unlike in the Washington case where police torture coerced a confession, there was no compulsion in this case, and petitioner has not met element G4. Concerning the McClinton case, Washington has discussed McClinton. However, the issue in McClinton was whether a petitioner voluntarily brought about her conviction by committing the acts that constituted a void offense. The argument in McClinton was that by bringing a gun into the penal institution, that the petitioner voluntarily brought about her conviction. McClinton was not a guilty plea scenario or a defense trial. So the issue is different when the conduct is different. It's not the conduct of committing the void offense, it's the conduct of pleading guilty to the void offense and the bail offense together and receiving the package deal. So, the lack of compulsion because petitioner still could have gotten one to three years imprisonment on the bail charge in this case. Are there any questions on element G4? No. Turning to element G3, the petitioner was required to prove that he was innocent of the offenses charged in the indictment. The concurring justice in the ground noted that whether that language requires a petition to prove their innocence of the charges in both indictments in a joint plea scenario is an open question. Where someone pleads guilty to two cases together in a single hearing with a joint resolution of both cases, the cases do start separately, but then both of the parties choose to resolve them together treating them as one for the purposes of the plea agreement. The people's position is that under those specific factual circumstances, it's ambiguous as to whether the term, the indictment in G3 refers to both indictments that were treated together. To resolve that ambiguity, under the principles of statutory interpretation set forth in Warner et al. Peace Law, the court can look to the legislative intent as instructed in the statute. Warner, Brown, and Hilton describe the legislative intent in G3 as being to limit claims for compensation to petitioners who have shown their innocence of all charges in order to have a quick, absurd result of convicting people who could have been in prison for more serious bail charges if they had not pled guilty to void ones that were later recognized as void ad initio. Counsel, would you have a different opinion if these pleas took place across the hallway? If the defendant had to move to the courtroom next door to finish the plea agreement? If there was one, yes. If there was one plea agreement that said he's pleading guilty to this and a second plea agreement occurs later in time, different hearing, other one not mentioned, no point benefit. In that case, there's no point benefit. But here, it's indicated that they're treated together even when they're saying, we'll impose a probation fine on whichever case. And in this case, it did happen to be that they were treated together. So that is an indication of a package deal. Well, if the same prosecuting office agreed to a particular deal, but the cases were in different courtrooms and two different judges did it, you'd think that's a different result. It depends on whether there was an express intention to treat them together. So whether a package deal was contemplated or not. And here, the people's position is that the package deal was contemplated. So if the second case referenced the first one and said they have this joint resolution for these two cases, we already did that case, then that would still be a package deal. And if it was never mentioned, that wouldn't unite them. And if they were in two different counties? The same thing, it just depends on the intent of the parties. If they have both agreed that it is a package deal and that the case's resolutions hinge together, then that would fit the indictment encompassing both. If they're treated separately, as having nothing to do with each other, then they would not. Thank you. The people's position is that the chairman's group are innocent, so the charges are both indictments. If there's a combined plea here, what's in the people's position, a combined plea, and the petitioner hasn't, definitely is innocent of the unlawful possession of a controlled substance charge, so he has not met all of the needy degree in this case. Concerning the murder charge scenario that opposing counsel mentioned, the Moore case addresses this issue. In the Moore case, a petitioner happened to receive more time on an invalid offense than the valid offense, and the Moore case mentions that that doesn't mean there's not a remedy. The COI statute's only been around since 2008. There may still be whatever remedies existed prior to the COI statute, there's just not an impediment to a certificate of innocence in that case. So the way the legislature has written the statute, they are requiring innocence of all charges. Just the most very clear cut of cases that petitioners have spent too much time incarcerated than they otherwise would have on valid charges, and that's just how they wrote G3. Are there any questions on element G3? So, I have a question about G3 and G4. The position of the state is that the defendant can't get the certificate of innocence, number one, because he pled guilty, and the second reason why he can't get it is because he pled guilty to two different things at the same time. Is that right? Yes, the second one is because he pled guilty, and he pled guilty under circumstances with no compulsion, and then the second one is that because he was not innocent of the offenses in both indictments that are brought together by the guilty plea, so the plea is relevant there, as it's what would combine those two cases. Okay, thank you. Are there any other questions? I don't have any questions. The people of Amstutz Court affirm the petition for certificate of innocence. Thank you, Your Honors. Thank you. Thank you, Ms. Byowen. Mr. Flaxman, any rebuttal? Oops. The two things I'll address, the one was the question about the concurrent time, and my understanding from the record is that Mr. Pruitt received credit for 67 days on the AUW charge and credit for seven days on the possession of controlled substance charge, so it looks like there's 60 days additional that was attributable only to the unconstitutional weapons offense. In terms of the combining with a separate indictment issue, I think that Justice Heddle's questions are really significant, and that if the plea is in a courtroom across the hallway or if it's in a separate county, the state agrees that that doesn't combine the charges for the question under the certificate of innocence statute. We don't see anything in the statute that would require a different result when there's a combined plea. There's no mention of plea bargaining in the statute. There's the Supreme Court in the Washington case mentioned that other states' compensation systems do address guilty pleas, and I think there's three or four states that say the equivalent of a certificate of innocence is not available to a petitioner who pleads guilty. That's not the case in Illinois, and we don't see anything in the statute that says consider pleas or combined pleas. And that's, unless there are other questions, thank you for your time. No, thank you, Mr. Flaxman. Thank you. We thank you both for your arguments this morning. We'll take this matter under advisement, and we'll issue a written decision as quickly as possible.